The next case on the docket is People v. Dennis Kelly. We have, for those in the audience, we have a hybrid situation going on. We have one counsel on the screen, electronically, and we have counsel in court. Mr. Raymond, are you appellant? Yes, Your Honor. All right, you may begin. I'm sorry, this is 523-1231, People v. Dennis Kelly. May it please the Court. My name is Matt Wayman. I represent the appellant, Dennis Kelly, in This case asks whether a man who had once been found unfit to stand trial was later tried and sentenced while showing the same psychotic symptoms, and whether his lawyer's failure to act denied him the effective assistance of counsel that the Sixth Amendment requires. Let me interrupt you. Are you having any problem hearing, Ms. Wells? Okay, you may go ahead. Our position is straightforward, that fitness is a constitutional gatekeeper. If a defendant cannot rationally understand or assist in his defense, the trial cannot lawfully proceed. That is People v. Manning and People v. Jackson. Just a brief background, Mr. Kelly was found unfit early in this case and later declared restored without medication and on the thinnest evidence of malingering. Months later, as trial neared, he again became noncommunicative, withdrawn and delusional. Defense counsel told the Court that he could not speak with his client or have his client assist him in preparation for trial. Despite those warnings, no fitness motion was filed and no hearing was held. Trial and sentencing had proceeded at times in Mr. Kelly's absence. Mr. Kelly made a brief appearance on the second day of trial to testify on his own behalf. Fitness has to be reassessed under Illinois law. Fitness is a continuing question, and Manning and Jackson, the Supreme Court, have held that where new behavior raises a bona fide doubt about fitness, the Court must pause and inquire even after an earlier finding of competence. Didn't the Drum Court, during Mr. Kelly's testimony, make that determination of whether there was competency? They were talking to Mr. Kelly about whether or not, about his testimony, it had been coherent. No fitness concerns, just because the defendant has the ability to talk and understand what is happening. There was no, there was isolated moments of coherent speech. Our position is that the breakdown occurred way before that, during trial preparation, where he was not able to actually participate with his trial attorney to prepare for the trial. So just because he was able to come into court and somewhat coherently testify that no proper fitness determination was made prior to the trial or prior to the first day of trial. Wasn't there an opportunity for his attorney to work with him during a time when they said the defendant was fit? Yes, for a brief period of time, but there was no determination made, or the trial counsel had said prior to that, that he had not had the ability to communicate with Mr. Kelly or adequately prepare for that trial. He actually requested a continuance of that trial because of these reasons, or taking these reasons into account. But at no point did trial counsel ever make the determination or ask the trial court to inquire into Mr. Kelly's fitness to be able to stand trial before the trial proceeded in his absence. Even when he was testifying? Our position would be that that was just, it wasn't a fitness determination made by the court which would allow the trial court to move forward. Plus, that should have been made prior to the trial. Additionally, trial counsel should have been the one that requested a fitness determination of his client before moving forward with the trial, as opposed to just asking for a brief continuance. He just asked for a continuance of the trial date. That would just be a delay. It wasn't able to make the determination as to whether or not Mr. Kelly was actually competent to move forward with the trial. Okay, thank you. Did one of these psyche evals find that he was malingering? It did a brief kind of purview overview test. It was just a brief test that they gave him prior to him going back to the court. It was not a substantive evaluation into whether or not they actually believed that there was evidence to support the fact that he was malingering. The psyche report said that he could possibly be malingering, but made no determination. They also kept the medical diagnosis that he had an unspecified psychotic disorder originally and they found that he had schizophrenia. They then changed it to an unspecified psychotic disorder. So even the psyche report, when it said that he restored his fitness, still found that he did have a mental health disorder at that time. Additionally, he spent several months at the psych hospital. They gave him no psychotropic medication. They gave him no mental health counseling or any substantive treatment to be able to make that restoration determination. I'm not trying to challenge that. I'm just saying that they didn't really do much to return him to that restorative state that would allow him to communicate with his trial counsel to adequately prepare for trial. Even after he was said to be restored, several months passed before the trial start. It was at that point that the communication again began to break down with his trial counsel, that he was not able to help his trial counsel adequately prepare. So in the time that he got back from the mental hospital until the time the trial started, his mental health significantly declined, which is evidenced by the fact that he was not shown up to court, that he was not communicating with his trial counsel, and he was not communicating with the trial court either. Is it correct that my reading of the facts of the case seem to indicate that perhaps the court felt that he was capable, because we don't have to be fully mentally healthy to be found capable of participating in their own defense. But, and coupled with the malingering suggestion, if you will, did the court find that it wasn't that he was incapable because of his mental capacity to participate, but that he was unwilling for reasons other than his mental health? I think that's a decent take on it. I believe that the court did make its own independent determination that he was malingering. I think that's kind of one of the problems here is that they personally felt that he was malingering and made that determination without actually bringing him into court and being able to inquire and make a rational determination of Mr. Kelly himself for the court to be able to make that determination. They just basically took that brief statement on the end of the second mental health evaluation and made a personal determination without any inquiry from his counsel or inquiry from the court to make that determination that he was in fact malingering, which we believe is an issue as well. It seemed to me like his own attorney, though, didn't necessarily feel that he was mentally incapable, that it was more of a choice that he was making. I think that the attorney was upset with Mr. Kelly. I think that this case went on for a long time, that they were trying to get this thing to trial, and they kind of rushed it a bit as far as making the actual determination as to whether or not he was fit. I think that for a brief period of time he was restored to competency based off that second mental health evaluation, but by the time he got returned to that jail and by the time he got closer to trial, his mental health had very clearly declined, and the court at that point should have held another fitness determination. His counsel should have very clearly requested a fitness determination, and neither of those things happened, which is why we believe it was on his attorney more so to request to the court to make that determination as to whether or not he was fit to move forward with the trial. But if the attorney didn't feel that he was unfit, he has no responsibility to make that request. No ethical responsibility, I should say. Is it my belief, or is it my understanding that he made it to 10 of the 12 different meetings and so forth with the attorney and with the court? He only refused to show up to two different things, is that correct? He refused to come to court on a number of occasions. Also, when he was meeting with his client, he would go to the jail and he would speak to him through his cell door. There was multiple occasions. With his pillow over his head or blankets over his head? Correct. There was multiple occasions where he would just not speak to this attorney. But there was also testimony from one of the jailors, I believe, that when he wasn't subject to going to court, he interacted and did things more normally. Which is an additional issue that we have a jailer making determinations in regards to prisoners' mental health. That jailer actually came over to court and testified. The court heavily relied on that testimony for the determination that he was able to come to court but did not. But the testimony of the jailer was not as to his mental health. It was whether or not he appeared sick. So the testimony was not, well, expert testimony.  As a matter of fact, I saw him today. He didn't seem like he was physically ill to me. Again, he's not a doctor, so you can't know that for a fact. And then also the fact that the court could rely on those fact testimonies of that jailer in terms of where the defendant was on that day and so forth and so on. I think the jailer actually said, when he was posed the question, is there a mental health problem or something, he says, I'm not qualified to answer that. So, something along those lines. It's our position that that would have been a defense counsel at that point to actually request that his client come in so a fitness determination could not be made. If we have all these questions being asked, the simplest thing to do would have been to bring the defendant in so the court could independently make that judicial determination in regards to whether or not they felt at that point that he was malingering. But there was no judicial inquiry made. They simply left him in a cell and proceeded in absentia. So, I guess where I see this judge making this decision was on the occasions where the defendant did appear before the judge. I think the judge found that he was answering, he knew time, place and so forth and so on. I think there was one indication when he was found unfit that he didn't know who he was. He knew where he was and when he was. He didn't know who he was. He thought he was the Prince of Saudi Arabia or something like that. But afterwards, when he was found fit, the court did have some interaction with him. Some opportunity to observe him and then coupled with his own attorney's suggestions perhaps and the other testimony presented from the judge coupled with that malingering. Malingering is always in the background. Right. Especially for the judge. He didn't feel like, he thought the guy may have been anxious about going to court but not mentally incapable of doing it. Is that a fair assessment? Judge, I see my time has expired. May I briefly respond to your question? Yes. So, I believe that for a great deal of time he was restored to competency. I believe that that went downhill very significantly by the time he got to trial. I think that the trial court could have very easily made a simple determination to just bring him over to see that he was found unfit. The problem that we have is that the court is making this determination without the client being there. The additional problem is that his counsel is not effectively representing him to have him in court so that he can knowingly and voluntarily, one, waive his right to even be at a trial, but two, advise the court that he is fit to move forward with the trial. So, I believe it was a breakdown on his trial counsel's part. It was also a breakdown on the court's part not bringing him in there to make sure that the waiver of him not being at trial was knowingly and voluntarily, which is required as well. Thank you, Justice. Okay. You will have a few minutes, Mr. Wyman, after Atlee's argument. All right. Ms. Wells? Yes, Your Honor. Your Honor, this counsel may please report. This issue turns on whether counsel felt there was a bona fide doubt as to his client's fitness because if there wasn't a bona fide doubt, then he had no obligation to make a narrow motion. And the Walker case is very clear that both prejudice and official performance turn on that issue. This is very fact-specific in this case. In April of 2022, there was a bona fide doubt based on his conduct in court. However, after being finally admitted in May of 2022, he was restored to fitness in 2023. That's very specific because he met the criteria for a livery. He had no negative symptoms of schizophrenia that was demonstrated, and his diagnosis was changed in the second evaluation to unsuspecting psychiatric or psychotic disorder. He was not treated with medication because of his decline, so the fact that he didn't have medication in the jail was of no import because he was restored to fitness without medication. After his fitness was restored in February of 2023, he attended 12 of the 14 court dates, so he was in front of the court. In May of 2023, on two occasions, the court specifically asked counsel, any issues with fitness? Counsel said no. In July of 2023, just two weeks or so before the trial date, counsel told the court that the defendant was reluctant to discuss the case with him, but he understood what was going on. Then the following week, counsel reported back to the court that they had had two fruitful conversations about the case, and there were no fitness issues. So again, we have counsel saying, I don't have a bone marrow damage. On July 23rd, when this defendant failed to appear for the jury trial, not only did the court go so far as to have the jail surgeon testify, but counsel told the court that he had talked to the defendant that morning who claimed he didn't feel well. Counsel had seen the defendant on Saturday, and he appeared, quote, normal. Then the surgeon's neighbor said that the defendant had told him that very morning that he didn't feel well in court because of what he was doing no sense at all. He didn't seek medical care. He didn't tell the surgeon that he was ill. So then what did the defense attorney do, knowing that he didn't have a pulse right now? He made a motion to continue. After the surgeon's neighbor's testimony, the court denied that motion and specifically found that the defendant was willfully avoiding court. August 1st, the next day, the defendant did the same thing. He didn't come to court. And they had a hearing. The court did everything it could to ensure that the defendant had an opportunity to attend his jury trial. When did the defendant choose to come to court? When it was his turn to testify. And he did so ably. He engaged in an outpouring of support that was coherent, knowledgeable. And even after the defendant, his testimony was presented, the questioning by his jury, which was direct and to the point and full of details, there was no question. The court didn't raise a vote by bail. The defense counsel didn't raise a vote by bail because there was none. Moving forward, a month later, approximately, he failed to appear for a sentencing. The defense counsel said, I tried to speak to him that morning in the jail. The defendant wouldn't speak to him. He spoke to him through the, what they call the temple, the door, the open door. He sent back a message that he would speak to him tomorrow, and his defense counsel told him that tomorrow would be too late. Counsel made five, six attempts at conversations with the defendant between August 1st and August 31st. And the court then asked counsel specific questions. Is he refusing to meet with you? Yes. The court then asked, are you of the belief that his failure to appear is a willful decision, a free and voluntary choice? And the defense counsel responded, I think it's a voluntary decision. So what we now have is a convergence of counsel's ethical responsibility, where he's responding specifically to the court's questions. We have the defendant who can accept the court. He didn't want to hear the damning evidence against him. He didn't want to be pointed to and identified. And he didn't have to do any of that because he didn't come. And as Casey says, you can have mental illness, and you can still be put for trial. And what the domain is for, which counsel had not identified, the defendant's ability to participate with his counsel at trial was an act of participation in case and purpose, which is the purpose of the testimony, inconsistent with his assertions on the basis of the stand trial. The defendant not only existed in his defense, he was not prepared to defend himself. He offered to be killed. And that came in as a self-defeating claim. So this argument comes down to, is that his premise that his failure to appear may be connected to unfitness. But he didn't have an extent to say he was unfit as a trial or in his defense team. And it is dependent for him to prove ineffective as his counsel. If you have an appearance of appearance plus mental illness being sufficient to raise a motto like that, we're going to be having an inordinate number of unfitness motions. And in this case, though, that was not the standard. The defendant claims that there were facts that support that there were circumstances outside of his control that caused Spinner to appear. That is a lie, Mr. Arjan. The defendant's testimony and his counsel's all represented in his own cooperation and his ability to testify. Counsel has an ethical responsibility in Kanderson Court. And the Supreme Court found that it is not counsel's responsibility in a criminal situation to make sure that the trial is having a solid fit. It is to determine that he has a fair appeal. In this case, it all comes down to whether counsel has bona fide doubt that the defendant, in this case, was unfit. There was nothing that supported that. The case decided that the defendant talked about his constitutional right to be present. He can't prevent his own trial by voluntarily absenteeing himself from it. And that's what this court found that he did. There's nothing, nothing in the structure to support otherwise. This old diagnosis and everything that came along with it, when he meets the criteria for malingering, and he's been restored to fitness, we don't just get to go, oh, well, he was previously unfit, and he's mentally ill, so he, you know, we're just, we need to have a bone to pick up. That is not a bona fide doubt. There is no claim here that his past retort was violated. But now, in looking to continue, that's not an issue, because the court found that he voluntarily abstained himself, and he did. This is an apt old saying. You can live a worst of life if you cannot make the best of it. And that is exactly what happens in this case. The defendant was given a day, his counsel, eight minutes to come to court. So the neighbor said, whenever you're ready for the court, I'll take you. He chose to go when he chose to go, because he wanted to testify. I want to briefly address the meaningful adversarial testing and doxing effects that are completely inappropriate to this case, where the counsel was represented in a trial, taking a validated sentence. And the order of, you know, sections of the thickness evaluation that's sentencing, where the counsel needs to work with the defendant to have a court that said, I didn't think there were any indicating factors that actually changed that court's mind, or find that there was a mitigating factor. The counsel was not affected in that case either. First of all, there's no human fair. We've asked this court, I think the counsel was not affected in her defendant's conviction. If there are no questions, I would like to ask a doubt. There are no questions, Ms. Wells. We appreciate your argument. We're going to hear some rebuttal from Mr. Wayman. Mr. Kelly had previously been found unfit, and the same symptoms that supported that unfitness resurfaced in the period immediately leading up to the trial. This was withdrawal from counsel. This was refusal to communicate, isolating behavior, and inability to participate in the preparation. Defense counsel stated on the record to the court that he had had no meaningful contact with Mr. Kelly during the period leading up to the trial. The state's position also does not address the subsequent change in behavior that we briefly stated before. I apologize, Judge. The state also contends that Mr. Kelly's absence was voluntary, but this waiver must be done in the presence of the defendant and must both be knowingly and voluntary. A defendant who may be unable to understand the nature and purpose of the proceedings cannot knowingly waive their presence. So are you saying that if a defendant doesn't want to come to court, that somehow the court must determine that refusal is knowing and voluntary? How do they do that? Correct. They would have to bring him in by Webex. There's multiple ways he'd appear by Webex at multiple periods before then or making the determination based off the statement of the jail guard there and also, I guess, a brief back from his attorney that had spoken with him a day or two before. How do you make somebody appear in front of even Webex if they don't want to do that? They don't want to come out of their cell, for example? Yes. We do it all the time down in court. Basically, you just take a tablet to the cell, and the judge would ask them if they want to appear or not, and they would be able to make that determination at that point. I don't believe that he even knew if it was a trial or knew what else was going on, I think, which is evident by his coming to trial the second day. He missed his trial the first day, but he obviously wants to be there for his trial. Defense counsel stated that he said that he didn't want to be there for a sentencing, and he said, I'll talk to you tomorrow. He then said tomorrow is going to be too late. So there's no evidence there that he even knew that that was going to be his sentencing or what was occurring and why it would be too late. Where defendant can't assist or communicate, counsel cannot reasonably choose not to raise his fitness. And this is similar. This is familiar with United States v. Chronic, which applies where the adversarial testing function does not meaningfully occur. The record of this trial shows that there was minimal cross-examination, that no developed defense theory of this case, that there was no challenge to the use of the fitness report at the sentencing by his trial counsel. And the agreement to proceed at sentencing without the client present. Those circumstances reflect a breakdown in the adversarial process, not a strategic posture made by his attorney. With respect to prejudice, if Mr. Kelly was not fit, the trial could not lawfully proceed at all. Fitness is the condition that allows the trial to be constitutionally valid. What is our standard with regard to overturning a trial court's finding of fitness? It would be de novo at this point, that the court has the determination to be able to make that and overturn it, which is why we believe, and it's our respectful request at this point, that the conviction be reversed and the case actually be remanded for a new trial following the proper determination of fitness, so that fitness determination would need to be made prior to any sentence being valid here. Thank you. Thank you, Mr. Kelly. Thank you, Your Honor. Thank you both counsel for your arguments here today. This matter will be taken under advisement. We'll issue an order in due course.